919 F.2d 143
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roy HOUSTON and Carol Houston, Plaintiffs-Appellants,
v.
BANK ONE N.A.-WISCONSIN, a National Banking Corporation, and
Samuel Seavitte, Defendants-Appellees.
 Nos. 90-1166, 90-1260.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 27, 1990.
Decided Nov. 30, 1990.
 
 Before WOOD, JR. and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 On April 15, 1981, Roy and Carol Houston borrowed $53,000 from Brown National Bank, predecessor of defendant Bank One. They gave a note, providing for interest at 14-3/4% per annum, secured by mortgages on a residence on 17th Avenue and a residence on 20th Avenue in Kenosha, Wisconsin. It was expected that the Houstons would soon sell the 17th Avenue property and pay most or all of the loan, but that did not happen. No payments of principal or interest were made until September 1984. On August 15, 1984, defendant Seavitte, an officer of the Bank, wrote the Houstons, "asking that you begin making monthly interest payments on the outstanding balance of $53,000.00. The payments will be $651.46 per month, beginning September 14, 1984, and due every month thereafter on the 14th." $651.46 is the monthly equivalent of 14-3/4% per annum. These payments were made until the Houstons obtained refinancing from another bank, and asked for a statement of the amount due. In response the Bank asked for payment of $53,000 plus $26,080.05, interest earned from April 15, 1981 until August 14, 1984.
 
 
 2
 The Houstons paid the full amount requested November 5, 1987. Thus they paid interest at 14-3/4% per annum for more than six and one half years after the date of the note. In March, 1989, they brought this action against the Bank and Seavitte, seeking recovery on various theories. There are ten counts, not all discussed on appeal. Almost all stem from the Houstons' belief that the note matured April 15, 1984 and that its provision for 14-3/4% interest expired on that date. The sixth count claimed a misrepresentation in April 1984, as a result of which the Houstons did not attempt to refinance.
 
 
 3
 The district court granted defendants' motion for summary judgment on all ten counts, rejecting the Houstons' interpretation of the note. The court denied defendants' motion for Rule 11 sanctions. Judgment was entered dismissing the action with prejudice.
 
 Jurisdiction
 
 4
 At oral argument, we questioned whether the district court had jurisdiction to hear a case seeking recovery for violation of 12 U.S.C. Sec. 85, setting the maximum rate of interest a national bank may charge. The parties alerted us to 12 U.S.C. Sec. 86 which authorizes an action by anyone who has paid a greater interest rate.[1] Thus the district court had federal question jurisdiction. 28 U.S.C. Sec. 1331.
 
 The Interest Rate Provision
 
 5
 In order to determine the merits of the Houstons' claims, we must first interpret the note. The relevant portion of the note says,
 
 
 6
 Upon demand for value received, I promise to pay to the order of THE BROWN NATIONAL BANK OF KENOSHA, a national banking corporation, located in the City of Kenosha, Wisconsin, the principal sum of FIFTY-THREE THOUSAND AND NO/100THS ($53,000.00) DOLLARS, together with interest thereon from date hereof at the rate of FOURTEEN AND THREE-QUARTER (14-3/4%) PERCENT per annum on the principal amount unpaid. At such time as demand is made this note shall become due and payable on or before THREE (3) years after date in monthly installments which shall be computed on a twenty (20) year repayment schedule based upon the principal amount due at the time of such demand, including interest at the rate of FOURTEEN AND THREE-QUARTER (14-3/4%) PERCENT per annum.
 
 
 7
 Both parties seem to accept the proposition that the provision for 14-3/4% interest did not survive maturity, although courts have expressed differing views on that subject. See 45 Am.Jur.2d Interest and Usury Sec. 69. We have found no Wisconsin decision. The parties disagree when this note matures. The second sentence of the note is the source of the difficulty. It calls for a somewhat unusual operation of a demand. Under this sentence, a "demand" does not cause the full amount of the principal to become due, but triggers an obligation to pay monthly installments, computed as if amortized over 20 years. After three years of installment payments, the outstanding balance becomes due.
 
 
 8
 The Houstons claim that the note required full payment within three years of the date the note was signed, and that the provision for 14-3/4% interest then expired. The Bank contends that the note allowed it to demand payment at any time and that any unpaid balance became due three years after demand. It would follow that the provision for 14-3/4% interest would not expire until three years after demand. Both the district court and the bank have explained why this is the proper interpretation of the language of the contract.[2] The district court's explanation is persuasive:
 
 
 9
 The first mention of the time period of three years occurs after the mention of when demand is made. If the note was intended to last three years at the most, the note would likely have mentioned the three years in the first clause, stating something to the effect of, "upon demand or at the end of three years...." The placement of the three-year time frame strongly suggests that it is the demand which triggers the three-year time period.
 
 
 10
 Additionally, the date of the note is referred to as "date hereof." The use of the phrase, three years "after date" in the sentence which refers to the demand also supports the construction urged by the defendants. It is true that the only date specifically referred to in the note is the date of the note, but that is because it was not known what the date of the demand would be. I cannot conclude that if the note were intended to be repaid by April 15, 1984, at the latest, that date would not have been included somewhere in the note.
 
 
 11
 Slip op. at 8. Under the Houstons' interpretation, moreover, the note could mature without a demand ever having been made. Thus, we hold the note means that "demand" may occur at any time and that "demand" triggers a duty to pay installments over a three year period and to pay the remaining balance at the end of the three years.
 
 
 12
 This interpretation of the contract precludes the Houstons' usury claims. Under the applicable federal law, an interest rate is permitted if "allowed by the laws of the State, Territory, or District where the bank is located." 12 U.S.C. Sec. 85. Thus the analyses of the federal and state usury claims are identical.
 
 
 13
 The relevant Wisconsin usury law provides,
 
 
 14
 The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in ss. 138.041 to 138.056, 138.09 to 138.12, 218.01 or 422.01, in which case such rate shall be clearly expressed in writing.
 
 
 15
 Wis.Stat.Ann. Sec. 138.04 (West 1989). Under Wisconsin law, no rate limitations apply to residential mortgage loans. Wis.Stat.Ann. Sec. 138.051(8). The parties agree that this means they can contract for any rate if the rate "be clearly expressed in writing."
 
 
 16
 We have determined that the provision clearly expressing the 14-3/4% rate was in effect at least until three years after demand occurred. We agree with the district court that the August 15, 1984 letter, even though a "demand" that current interest payments be made, was not a "demand" which triggered the three year period of installment payments, as contemplated by the note. Hence the provisions for 14-3/4% interest did not expire August 15, 1987, but remained in effect until payment.
 
 
 17
 Thus the collection of interest at 14-3/4% was permitted by Wisconsin, and also federal, law. This conclusion is fatal to all the claims under consideration except Count Six.
 
 Count Six
 
 18
 Count Six alleged that Bank representatives made several false statements. The argument here, however, is confined to the alleged statement,
 
 
 19
 The Bank was charging a reasonable rate of interest and that it would not be to the Houstons' advantage to refinance their mortgage loan as per the statement of Mr. Seavitte in April, 1984.
 
 
 20
 In support of the motion for summary judgment, defendants filed Mr. Seavitte's affidavit that he did not make the statement, but that in April, 1984, the rate was in fact reasonable. The Houstons filed no affidavit asserting that the statement was made. Thus they failed to show a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986). Accordingly, it is irrelevant whether the statement would have been true if made. We need not reach the Houstons' challenge to the foundation of an affidavit tending to show the rate was reasonable for this type of loan in April, 1984, or their argument that it was contradicted by an affidavit they submitted showing a decline in the Federal Reserve discount rate on 90 day commercial paper from 13% in April, 1981 to 8.5% and 9% during April, 1984.
 
 Rule 11 Sanctions
 
 21
 The Bank filed a cross appeal to challenge the district
 
 
 22
 court's denial of its motion for Rule 11 sanctions. The
 
 
 23
 standard of review is deferential. Mars Steel Corp. v.
 
 
 24
 Continental Bank, N.A., 880 F.2d 928 (7th Cir.1990). The
 
 
 25
 district court refused to award sanctions because this
 
 
 26
 dispute stemmed from a mortgage note that can best be
 
 
 27
 termed confusing, inadequate bank statements, and a
 
 
 28
 laissez-faire attitude (to its own detriment, in some cases)
 
 
 29
 on the part of the bank toward running its business, at
 
 
 30
 least in its dealings with the Houstons. While sloppy
 
 
 31
 business practices are not a cause of action for which the
 
 
 32
 Houstons can recover, I don't feel they should be penalized
 
 
 33
 for misunderstanding some of what went on.
 
 
 34
 Slip op. at 16. We find no abuse of discretion.
 
 
 35
 The judgment is AFFIRMED. Each party shall bear his own
 
 
 36
 costs on appeal.
 
 
 
 [1]
 The relevant statute provides,
 The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred. 12 U.S.C. Sec. 86.
 
 
 [2]
 The Houstons argue that the note was ambiguous and that deposition testimony as to the understanding of persons involved at least created an issue of fact as to when the parties intended the three year period to begin. They rely on a remark by the district judge characterizing "the document" as ambiguous. We do not consider the note ambiguous on this point, and do not read the remark, in context, as so holding. Judge Evans went on to rely solely on the language of the note to show the Houstons' interpretation did not make sense. He discussed extrinsic evidence only to clarify the interpretations the parties were proposing. Contracts are ambiguous as a matter of law (i.e. allowing admission of extrinsic evidence) only if they are reasonably susceptible to more than one interpretation. Just v. Land Reclamation, Ltd., 155 Wis.2d 737, 456 N.W.2d 570, 572 (1990); State Farm Fire & Casualty Ins. Co. v. Walker, 459 N.W.2d 605, 609-10 (Wis.App.1990). Although the language of the note is confusing, only one interpretation is reasonable